It is Dan Gurka or Dr. Dan Gurka, I'm not sure if I'm pronouncing the name right, but I'll be corrected. Thank you very much, Mr. Perkins. So Mr. Sussman, you've reserved two minutes for rebuttal, but before we start, how do you pronounce your client's name? Jurka, Your Honor. What's that? Jurka. Jurka. Oh, good, I'm glad you told me. May it please the court, I'm Michael Sussman from Goshen, New York, and I'm here for Dr. Jurka. This is an appeal from an order entered by Judge Ramos who denied our 60D3 application based upon fraud on the court. I'm going to start by directing the court to Judge Ramos's decision. But you're really, I mean, it seems to me you're really arguing the 60D6 motion, right? I mean, he made an assortment of motions, but the last ones were 60D6, really, right? Isn't that? D3, Your Honor. D3, I'm sorry. There's no D6. B6. B6 and D3. But it seems to me the appeal is really just about the 60D motion, right? The 60D3, yes. It's a fraud on the court argument. And let me just start with the joint evidence. Clearly, those have to be brought by a separate complaint, right? Well, they're recognizable and cognizable either way, actually, in this circuit. But at 1770, Your Honor, the court sets forth a standard, which I think is the operative standard, and we don't disagree with it, which is that the issue, whatever we point out, must, quote, unfairly hamper the presentation of the opposing party's claim or defense. And that's from the, it's cited from Duca and Gleason. Now, here, just to be very clear, the case was about defamation and a 741 violation. Defamation, as the court knows, requires publication, and 741 is a form of retaliation against health care workers for their revelations about patient abuse, to summarize. The court here acknowledged, as did the magistrate judge, Your Honors, that the defendants had, in fact, concealed and not disclosed a principal document. Now, to get this clear, I'm just going to cite pages of the joint appendix so it's clear to the court what's going on. At page 1605, request number 13, you'll see a request for the communication between Montefiore and ORMC, also known as Greater Hudson Valley Health Service, G-H-V-H-S. Those are the initials. What we're told, Your Honors, is that, and we're told this in an affidavit by Ms. Ratner at pages J-A-1754 and 55, that the search term jerker was not applied when searching for documents responsive to the request. The request related to the communications between Montefiore, where he had worked and where he allegedly had been defamed, and publication of whatever they had to ORMC. Nothing was disclosed with regard to that, and that's not disputed on this record. Nothing was disclosed. However, if one looks at 1536 and 37, you will see the communication between Trotta, the security director of Montefiore, and the security director of ORMC, J. Miguel Rodriguez. That was only disclosed in a subsequent piece of litigation, which my client brought against ORMC. It was not disclosed in this case. The magistrate judge and the district court judge both acknowledged that and recognized it ought to have been disclosed. The question here is whether Judge Ramos, and I'm now looking back at 1771 and 1772, in analyzing the failure to disclose, properly found this was not a fraud on the court. And there are three prongs that are discussed in his decision, and I just want to briefly touch on each prong. First is intentionality. Our position is that the court was in no position to determine intentionality based on the record before it. All it had before it, Your Honors, were the following facts. Ms. Ratner's affidavit that a search, a hold had been placed, a litigation hold had been placed. And the court had no intentionality.      But it's your burden to prove these things. I agree. It's not his burden to disprove them. Well, I believe we've proved, we've proven sufficient evidence to show intentionality. This is a real, I mean, this is a very high standard. I agree. I mean, it's not just like, you know, discovery mistakes were made. It has to have interfered with the judicial system's ability to fairly and impartially adjudicate a case. And it did. And here's why it did. Because there are representations repeatedly made by counsel for the appellees in this case, Your Honor, that they had disclosed the relevant documents in their possession. That was fundamentally untrue. They did a, they said that repeatedly to the court, and they counterposed their angelic performance with my client, who they portrayed as someone who had purposely not provided 83 tapes of videotapes. Your client was sanctioned, right? I'm agreeing. That's the point. There was this counterposition. One side is angelic, and the other was demeaning. The other side is not providing, sorry. You don't dispute that your client failed to disclose, what was it, 83 tapes? I'm not disputing it. I'm not disputing it for purposes of this case. There is explanation in the record, but I'm not disputing it. What I am saying, though, is because of the materialness of that, from the court's point of view, I believe if the district- But what's the fraud on the court? It may have been a misrepresentation that caused your client to decide to go ahead and settle because he was faced, he was confronted with the fact of his own improper conduct in front of the court. So how is that a fraud on the court? It may have been a fraud on him, but that's not fraud on the court. I disagree respectfully. I believe it's fraud on the court for this reason. If I, as an officer of the court, get up to the court and I say, I have disclosed- Every time there's a failure to dispose a document in a discovery dispute, it's a fraud on the court? If I represent to the court that I have done a thorough search, I'm sorry? That's a very big net. I think the notion of the distinction between fraud on a court, where the standard is hampering the presentation of the opposing party's claim of defense, which is what's cited by Justice Ramos, Judge Ramos, if that's the standard, then obviously I am impaired and hampered if a critical document. And when you say, Judge Sullivan, it's not whether you're impaired, it's whether the court is prevented from adjudicating fairly and impartially. The district court had no involvement in the voluntary dismissal of the case, right? Well, it has just, as Judge Wesley said, the district court had a great involvement in it because the district court set the sanction in motion, which caused my client and also there are two elements- But the sanction got set in motion by your client's conduct. Well, there are two elements. The sanction is imposed. I understand it may be difficult, but the sanction is imposed because one party is presenting the other as noncompliant when that party itself is entirely noncompliant in a material way. The document that was not provided to my client proves, proves the publication. My client's lawyer, Mr. Sadowski- What decision by the court was premised upon the misrepresentation with regard to the existence of the document? None. That's the whole point. None. But my client- Exactly. So how is it a fraud on the court as opposed to a fraud on your client? Because my client was deprived of the opportunity to present to the court a balanced view of what was actually going on in discovery. So the argument is- Excuse me. Sure. The argument is don't sanction me because they withheld the document or maybe both would be sanctioned because they had each done wrong. Exactly. The district- Well, no, I- I agree that's the argument because the district's not- But that's not- Sorry. So you say that was the opportunity that was lost? Here's the way the district court formulates this. It's 1771. He says at the conference, the relevant conference, neither party discussed the production of e-mails. That's what the judge says. The reality is my client did not know of the e-mail because they had hidden the operative e-mail. The critical question is the materiality of that e-mail to my client's ability to present his case. My client didn't just dismiss because of the sanction. He dismissed because his counsel counseled him, and this is part of the record, that he had no way of proving defamation. Why didn't he have a way of proving defamation? Because there had been a material nondisclosure by them of the operative document. So it's a little bit more complicated than the 40- No, I don't understand how that's a decision by the court. It's a decision by your client. The decision by the court- I can appreciate that your client ended up making a decision that perhaps he regrets because of the fact that I'm not saying buyer's remorse. I'm talking about the fact that he didn't know all the facts because he had it. There was a document that would have supported his case. But how is that a fraud on the court? Okay, perhaps it's what- My people may not appreciate the distinction that's drawn with regard to the availability of the relief, but that's not the dive that's cast for us. I don't agree. I think it's plainly fraud in the court if a lawyer represents, and again, the intentionality issue is not known. I asked for a hearing. All we got was an affidavit to the court from their side. The affidavit simply indicates that they did a search. It doesn't say they put in the relevant terms, which are asked for in the request. So there's clearly a fraud on the court in the sense of a lawyer making representations to a court which are not true. I've given overall discovery. That's not true. And the court relies on that in further proceedings in the case, in understanding the status of the parties, their respective respect for the court, frankly. I see my time is up.  You have reserved two minutes for rebuttal. Thank you. We'll now hear from Mr. Babin. Okay, Mr. Babin, you may proceed. Thank you, Your Honors. Jeffrey Babin for the minute, for your defendants. I didn't hear from plaintiff's counsel the words abusive discretion. That is the standard that's before this Court as recently, just last year, reaffirmed in the Marco Destin case. But there's two parts to abusive discretion. One, an erroneous legal ruling, and or, or a clearly erroneous finding. We've heard mostly about the facts. But I think Mr. Sussman seems to try to avoid what the law says. Three cases, or two, three cases I want to mention, Your Honors. Each of these cases, just like this case, Beggarly, U.S. Supreme Court, a consent decree, the Gleason decision of this Court, a voluntary dismissal with prejudice from a settlement, the Marco Destin case, a stipulated judgment. In each of these cases, the courts have said that under Rule 60D3, fraud on the court, that the fact that a failure to disclose a document or alleged deposition perjury is not fraud on the court, may be harm to a single litigant. Well, the district court found that the production of the, the failure to produce the email was unintentional, right? That's correct, Your Honors. So there's the legal and there's the factual. That's a fact that we would review for clear error. And then on top of that, we would review that clear error, plugging into the standard for Rule 60D3 for abuse of discretion. That's correct, Your Honor. And of course, those facts are not disputed, let alone anything to show a clear error. Most of the documents that are complained about in their brief are documents they obtained that were internal documents within the Orange Regional Medical Center, the subsequent employer. Dr. Jerka, when he resigned from a staff position, take a more lucrative position at Orange Regional Medical Center, had litigation against them. And he received internal documents there showing that there had been communication with Montefiore. And that actually, interestingly, was the basis of the Rule 60B2 motion that was timely filed within one year as newly discovered evidence. And at that time, they did not reinstate their earlier withdrawn 60B3 motion. So instead, they're relying solely on 60D3. But let me just say, it's not clearly erroneous also, because the district court made a factual finding based on what's in page 1754 of the joint appendix, the affidavit from Montefiore in-house counsel, that the parties had agreed upon certain search terms. And there was only one document. They already had all these other internal documents from Orange Regional Medical Center that they don't say should have been produced by us, and certainly in time for a 60B2 motion. And that there had been agreed upon custodians and search terms. And it was a single email that was really just an email from Montefiore to, I'm sorry, from Orange Regional Medical Center to Montefiore saying, we'd like to have a conversation. That's all that email said. So it was hardly material. And as the district court found, and there's no contrary affidavit or evidence that it was, one email was inadvertent. But going back to the case law, Your Honors, the Gleason case is, again, on all fours. The harm to a single litigant is not a fraud on the court. And as this court said in King, the type of fraud necessary to attack a judgment for fraud on the court is narrower in scope than that what is sufficient for relief by a timely motion under Rule 60B3 for fraud on an adverse party. The Rule 60B has six broad categories with a fairly lengthy time to bring it. One year for some of them, a reasonable time for others. 60D3 is not a vehicle to bypass those categories and time limits under 60B. It's not to give continuous bites at the apple. That's why it's a very narrow standard, as King said. And as this court said in Gleason, fraud upon the court is distinguished from fraud on an adverse party. Fraud on the court is limited to fraud, which seriously affects the integrity of the normal process of adjudication. And as Judge Wesley had indicated, there was no adjudication here. We can see from docket entry 100, the stipulation of voluntary dismissal filed on August 25, 2020, says right in the docket entry, no action required by chambers. Therefore, there was not even a judgment, let alone any action where there was an impact on the process of adjudication. And there's nothing in this record to show that the sanctions order itself that was imposed two weeks before the stipulation of voluntary dismissal was in any way untoward, even though that is not what they're seeking. In fact, if they were to reinstate this case, that sanctions order would be reinstated. Again, they had evidence already from within internal Orange Regional Medical Center records that they brought under 60B2. It was denied, and there was no appeal. And so now they're left with this very narrow standard. With respect to the clearly erroneous standard, I've mentioned the discovery issue a single email, which was really immaterial, given what else they had at that time. And at the time they brought the 60B2 motion, which we can see in supplemental appendix 61 to 79, they were already arguing within one year the same arguments about deposition perjury, and let me talk about the perjury. They're only talking about third party witnesses in their depositions, no one from Montefiore. These were third party witnesses from the subsequent employer who were in litigation already with Dr. Joka because they had fired him from his subsequent employment, and he had sued them as well. So they were interested witnesses, Dr. View and Dr. Rojas. There's no allegation that anyone from Montefiore gave untruthful testimony at any time, and that is clear from the district court's findings that cannot be disputed. So at the end of the day, Your Honors, a self-executing judgment, a self-executing stipulation of dismissal, no action required by chambers, is not a judgment. There cannot be fraud upon the court that affected the adjudication process. There are no clearly erroneous findings. As a result, Your Honors, this court should affirm. Unless there are any additional questions, I'll rest. All right, thank you, Mr. Babin. Mr. Sussman, you have two minutes of rebuttal. Thank you, Your Honor. J.A. 1536 and 37 is not an innocuous, meaningless email. It is the contact between Mr. Rodriguez and Mr. Trotta that should have been produced that would have triggered my client's ability to understand the central role of Mr. Trotta in this matter. Mr. Rodriguez testified at deposition. Mr. Trotta told him, told him that the reason my client was on this sheet, considered a terminated associate when he was not terminated, he was not terminated. He's not allowed on any Montefiore property. The reason for this was because he had spoken about patient abuse. That's what this gentleman, Mr. Rodriguez, stated. We didn't know Mr. Rodriguez was involved while this case was going on because this document was never provided to us. We had no way of knowing the interconnection between Mr. Trotta and Mr. Rodriguez. Mr. Trotta's response to this was Mr. Rodriguez testified at deposition, was in a phone call in which Mr. Rodriguez asked him what happened, and he said he was terminated from the facility because of his reports of patient abuse, which goes to the 741 claim and the defamation claim. That's what they failed to provide. Justice Park, Judge Park, asked a question about intentionality. The intentionality here is plainly inferential. It's based on the criticalness of this particular piece of evidence and what it would have uncovered for my client. It's not clear to me. You've said it with great indignation, but I don't understand why this is such a smoking gun document. Okay. Let me try to break it down. I'm sorry. I don't feel indignant. I feel passionate about it, but I'm not indignant. Here's what it's about. The claim is one of publication, that there was, in fact, a defamatory statement made about my client in this flyer, a false statement that he'd been terminated from a prior position and he was not allowed on the facility of Montefiore. Okay? He had never been terminated from that facility. He wasn't terminated. We know that on this record. My client asked for all communication in the defamation case from Montefiore to this specific ORMC. They say there is none. There's no such communication. But the defamation was already alleged, right? You knew about the defamation. You have to prove it, as you pointed out earlier. You have to prove it. You didn't have any proof. But there was other proof, right? No, no. That's the whole point. You filed a complaint that had no proof. I mean, not you, but there was a defamation claim that asserted no other allegations. The proof that was in the case, if you look at paragraph 75 through 77 of the amended complaint, you'll see what's asserted. What's asserted is that Dr. Rojas, Cesar Rojas, who worked at Montefiore, saw a posting at Wakefield where he worked, and the posting was this same posting. And the claim was that that was a publication. But they had a right to find out whether there was, in fact, a direct publication made to another facility. That was within their own facility. They were arguing that's not a publication. So under defamation, he pled it, but it wasn't sufficient. And I think they're right. That's not sufficient. What makes it sufficient is that Mr. Rodriguez, receiving this, wrote to Mr. Trotta, his counterpart at Montefiore, to confirm that this, in fact, had been published. And he sent him this flyer. Rodriguez already had the flyer. He was writing for confirmation. Trotta then has a phone call with him in which, as I said a moment ago, he not only confirms it, but he explains the reason, which makes out the 741 claim, because Trotta acknowledges that the reason this was done was because the individual had complained about patient abuse. They never gave us the link in discovery. And that's why it's not – I think one can assume it's intentional. It's critical to the whole case. So we go through the case, and there are a number of appearances where Ms. Gambarella, who's sitting here, is asked by the court, have you produced all your discovery? Yes, we've produced all our discovery, including on August 12th, Judge Ramos cites it. We've produced everything. But they repeat they hadn't produced it. So we come to the question. I think we've established that it wasn't produced. That wasn't the point. But we come to the – I'm sorry. Well, no, we're way over, and we do have other arguments. So we have your arguments in the briefs, so we will reserve decision. Thank you both. Thank you, Your Honor. Good to see you. Thank you.